1  CHRISTINA H. WANG, ESQ.
   Nevada Bar No. 9713
2  FIDELITY NATIONAL LAW GROUP
   1701 Village Center Circle, Suite 110
3  Las Vegas, Nevada 89134
   Tel: (702) 667-3000
4  Fax: (702) 433-3091
   Email: christina.wang@fnf.com
5  *Attorneys for Plaintiff*
   *Carrington Mortgage Services, LLC*
6

7

8  **UNITED STATES DISTRICT COURT**

9  **DISTRICT OF NEVADA**

| | |
|---|---|
| 10  CARRINGTON MORTGAGE SERVICES, LLC, a foreign company, | Case No.: 2:18-cv-00833-JAD-VCF |
| 11 | |
|            Plaintiff, | |
| 12 | |
|     vs. | **STIPULATED** |
| 13 | **JUDGMENT** |
| UNITED STATES OF AMERICA – | |
| 14  INTERNAL REVENUE SERVICE, a U.S. government agency; DOES I through X; and | ECF No. 9 |
| 15  ROE BUSINESS ENTITIES XI through XX, | |
| 16            Defendants. | |

17

18  Plaintiff CARRINGTON MORTGAGE SERVICES, LLC ("Plaintiff"), by and through

19  its attorneys of record, the Fidelity National Law Group, and Defendant UNITED STATES OF

20  AMERICA ("United States") (on behalf of the INTERNAL REVENUE SERVICE), by and

21  through its attorney of record, Greg Addington, Assistant United States Attorney, hereby agree,

22  stipulate and authorize entry of judgment as follows:

23  **WHEREAS,**

24      1.    This action involves the real property commonly known as 620 Reservoir Road,

25  Lovelock, Nevada 89419, and more particularly described as:

26             LOT B-11 IN BLOCK "B" AS SHOWN ON THAT CERTAIN MAP OF UNIT 1 OF PERSHING ESTATES MOBILE HOME SUBDIVISION, FILED MAY

27             9, 1986 AS FILE NO. 147707, PERSHING COUNTY OFFICIAL RECORDS.

28  Assessor's Parcel Number: 07-262-11 (hereinafter, the "Property").

Fidelity National
Law Group
1701 Village Center Circle
Suite 110
Las Vegas, Nevada 89134
(702) 667-3000

Page 1 of 4

1     2.    Katherine L. McCoskey ("McCoskey") obtained title to the Property as an

2    unmarried woman via a Grant, Bargain, Sale Deed that was recorded on November 18, 1994, as

3    Document No: 198183 of the Official Records of Pershing County, Nevada.

4     3.    In or about January 2007 and in connection with the Property, McCoskey

5    obtained a loan from Secured Funding Corp. ("SFC") in the principal amount of $115,710.00

6    (the "SFC Loan").

7     4.    As security for repayment of the SFC Loan, McCoskey executed a first-priority

8    Deed of Trust against the Property and in favor of SFC (the "SFC Deed of Trust"), which was

9    recorded on January 29, 2007, as Document No: 353748 of the Official Records of Pershing

10    County, Nevada.

11     5.    In or about June 2009, McCoskey obtained a loan from Taylor, Bean & Whitaker

12    Mortgage Corporation ("Taylor Bean") in the principal amount of $116,776.00 to refinance the

13    existing indebtedness encumbering the Property (the "Refinance Loan").

14     6.    Repayment of the Refinance Loan was secured by a first-priority Deed of Trust

15    that McCoskey executed on June 19, 2009, against the Property and in favor of MERS, as

16    nominee for Taylor Bean (the "Refinance Deed of Trust").

17     7.    Escrow for the Refinance Loan closed on or about June 25, 2009, and loan

18    proceeds were utilized to pay off in full all prior indebtedness encumbering the Property so that

19    the Refinance Deed of Trust would occupy a first-priority lien position against the Property.

20     8.    Specifically, $113,266.26 was used to pay off the balance of the SFC Loan.

21     9.    Even though the Refinance Deed of Trust was executed on June 19, 2009, and

22    escrow for the refinance transaction closed on or about June 25, 2009, the Refinance Deed of

23    Trust was not recorded until on or about May 1, 2012, when it was recorded as Document No:

24    479346 of the Official Records of Pershing County, Nevada.

25     10.    Pursuant to the payoff of the SFC Loan, the present beneficiary under the SFC

26    Deed of Trust caused a Substitution of Trustee and Full Reconveyance of the SFC Deed of Trust

27    to be recorded on August 10, 2017, as Document No. 498782 of the Official Records of

28    Pershing County, Nevada.

Fidelity National
Law Group
1701 Village Center Circle
Suite 110
Las Vegas, Nevada 89134
(702) 667-3000

Page 2 of 4

1      11.    All beneficial interest under the Refinance Deed of Trust was subsequently

2 assigned to Plaintiff.

3      12.    Plaintiff discovered that on June 1, 2010, the Internal Revenue Service ("IRS")

4 caused to be recorded, as Document No. 366915 of the Official Records of Pershing County,

5 Nevada, a Notice of Federal Tax Lien against McCoskey in the total amount of $20,100.11

6 ("Tax Lien").

7      13.    On or about May 9, 2018, Plaintiff filed the instant action for quiet title –

8 equitable subrogation against the IRS.  Specifically, Plaintiff seeks a judgment for equitable

9 subrogation that the Refinance Deed of Trust is subrogated to the SFC Deed of Trust's first-

10 priority lien position with all associated rights.

11      **THEREFORE,** to resolve this action, the parties hereby agree, stipulate, and authorize

12 entry of the following Judgment:

13      1.    That the Refinance Deed of Trust, attached hereto as **Exhibit 1**, is subrogated to

14 the SFC Deed of Trust's first-priority lien position against the Property, with all associated

15 rights.

16      2.    That the Tax Lien, attached hereto as **Exhibit 2**, is junior and subordinate to the

17 Refinance Deed of Trust first-priority lien position against the Property.

18      3.    That this action is hereby dismissed without prejudice.

19      4.    That each party shall bear their own attorney's fees and costs.

20 ///

21 ///

22 ///

23

24

25

26

27

28

Fidelity National
Law Group
1701 Village Center Circle
Suite 110
Las Vegas, Nevada 89134
(702) 667-3000

Page 3 of 4

1      5.     That Plaintiff's Notice of Lis Pendens, recorded against the Property on June 18,

2 2018, as Document No. 0502143 of the Official Records of Pershing County, Nevada, is hereby

3 expunged.

4      DATED this 15th day of August, 2018.

5 FIDELITY NATIONAL LAW GROUP     UNITED STATES OF AMERICA

6

7 /s/ Christina H. Wang     /s/ Greg Addington

8 CHRISTINA H. WANG, ESQ.     GREG ADDINGTON, ESQ.
Nevada Bar No. 9713     Assistant United States Attorney

9 1701 Village Center Circle, Suite 110     400 South Virginia Street, Suite 900
Las Vegas, Nevada 89134     Reno, Nevada 89501

10 *Attorneys for Plaintiff*     *Attorneys for the United States of America*
*Freedom Mortgage Corporation*     *(On Behalf of the Internal Revenue Service)*

11

12 **IT IS SO ORDERED. The Clerk of Court is directed to CLOSE THIS CASE.**

13

14

15 _____
**UNITED STATES DISTRICT JUDGE**

16 Dated:    8-20-18

17

18

19

20

21

22

23

24

25

26

27

28

Fidelity National
Law Group
1701 Village Center Circle
Suite 110
Las Vegas, Nevada 89134
(702) 667-3000

Page 4 of 4

# EXHIBIT 1

BOOK **480** PAGE**914**

OFFICIAL RECORDS
PERSHING CO. NEVADA
RECORDED BY
Fidelity Nat'l Title
12 MAY -1 PM 3: 38
ROLL 480 914
FILES
COUNTY RECORDER
DEP ___ FILE NO.___
28-
25-    479346

INDEXED

Parcel Number: 0726211

RECORDING REQUESTED BY
Name: **Taylor, Bean & Whitaker Mortgage Corp.**

**When Recorded Return To:** , Corp.
**Fidelity National Title**
**1001 Bryan Street, Suite 1700**
**Dallas, Texas 75201**

I hereby affirm that this document submitted for recording does not contain personal information.

*Kim Rappole, Title Specialist, FNTY*
Name/Title

—————— [Space Above This Line For Recording Data] ——————

# DEED OF TRUST

FHA CASE NO.
**331-1378472-703**

MIN: 100029500033453626

THIS DEED OF TRUST ("Security Instrument") is made on    **June 17, 2009**   . The grantor is
**KATHERINE L MCCOSKEY, An Unmarried Woman**

("Borrower"). The trustee is

**NEVADA TITLE**

("Trustee"). **The beneficiary is**
**Mortgage Electronic Registration Systems, Inc. ("MERS")**. MERS is a separate corporation that is acting
solely as nominee for Lender and Lender's successors and assigns). MERS is organized and existing under the
laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. **Taylor, Bean & Whitaker Mortgage Corp.**

("Lender") is organized and existing
under the laws of **FL**     , and
has an address of **1417 North Magnolia Ave, Ocala, FL 34475**

. Borrower owes Lender the principal sum of
**One Hundred Sixteen Thousand Seven Hundred Seventy Six and no/100**
Dollars (U.S. **$116,776.00**    ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due
and payable on    **July 01, 2039**    . The beneficiary of this Security Instrument is MERS (solely as
nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

**NEVADA FHA DEED OF TRUST**
**MERS**
**ITEM 2695L1**
**(0709)**

6/96

**GreatDocs™**
*(Page 1 of 9)*
T2695_20090220.100000

*0242053345362*

irrevocably grants and conveys to Trustee, in Trust, with power of sale, the following described property located in **Pershing** County, Nevada:

**See Attached Exhibit A.**

(If the legal description is a metes and bounds description, the name and mailing address of the person who prepared the legal description or if a document including the same legal description has been previously recorded, the information necessary to identify and locate the previous recording is:

**Taylor, Bean & Whitaker Mortgage Corp.**
**1417 North Magnolia Ave**
**Ocala, FL 34475**                                                                                                    )

which currently has the address of                    **620 RESERVOIR RD**
                                                                         [Street]

               **Lovelock**          , Nevada      **89419**        ("Property Address"):
               [City]                              [Zip Code]

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

        **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

        **2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum

**NEVADA FHA DEED OF TRUST**
**MERS**
**ITEM 2695L2**                                              GreatDocs™
**(0709)**                                                       *(Page 2 of 9)*

for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged

NEVADA FHA DEED OF TRUST
MERS
ITEM 2895L3
(0709)

GreatDocs™
(Page 3 of 9)

Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

NEVADA FHA DEED OF TRUST
MERS
ITEM 2695L4
(0709)

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8.** **Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9.** **Grounds for Acceleration of Debt.**

        **(a)** **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b)** **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

            (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

        **(c)** **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

        **(d)** **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

        **(e)** **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **eight months** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **eight months** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10.** **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by

**NEVADA FHA DEED OF TRUST**
**MERS**
ITEM 2695L5
(0709)

GreatDocs™
*(Page 5 of 9)*

Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

NEVADA FHA DEED OF TRUST
MERS
ITEM 2695L6
(0709)

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a

**NEVADA FHA DEED OF TRUST**
**MERS**
ITEM 2895L7
(0709)

foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

   **19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

   **20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

   **21. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $            .

   **22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | |
|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider |
| ☐ Growing Equity Rider | ☐ Planned Unit Development Rider |
| ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] |

**NEVADA FHA DEED OF TRUST**
**MERS**
**ITEM 2695L8**
**(0709)**

GreatDocs™
*(Page 8 of 9)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Katherine L McCoskey_ (Seal)
**KATHERINE L MCCOSKEY**     -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

State of _Nevada_
County of _Pershing_

This instrument was acknowledged before me on _June 19, 2009_ (date) by _____
_Katherine L McCoskey_

_____

_____ (name[s] of person[s]).

SHELLY INIGUEZ
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 07-4083-15
MY APPT. EXPIRES JULY 11, 2011

_Shelly Iniguez_
SHELLY INIGUEZ          Notary Public

MAIL TAX STATEMENTS TO

Name:     **Taylor, Bean & Whitaker Mortgage Corp.**
          **1417 N Magnolia Ave**
Address:  **Ocala, FL  34475**

**NEVADA FHA DEED OF TRUST**
**MERS**
**ITEM 2695L9**
**(0709)**

GreatDocs™
*(Page 9 of 9)*

# EXHIBIT A

ALL THAT CERTAIN REAL PROPERTY SITUATE, LYING AND BEING IN THE COUNTY OF PERSHING, STATE OF NEVADA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

LOT B-11 IN BLOCK "B" AS SHOWN ON THAT CERTAIN MAP OF UNIT 1 OF PERSHING ESTATES MOBILE HOME SUBDIVISION, FILED MAY 9, 1986 AS FILE NO. 147707, PERSHING COUNTY OFFICIAL RECORDS.

TAX ID #: 0726211

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO KATHERINE L. MCCOSKEY, AN UNMARRIED WOMAN BY DAN CROFOOT AND LLOYD JOHNSON DBA LOVELOCK MOBILE HOME SALES IN A GRANT, BARGAIN, SALE DEED EXECUTED 11/4/1994 AND RECORDED 11/18/1994 IN BOOK 285, PAGE 1 OF THE PERSHING COUNTY, NEVADA LAND RECORDS.

STATE OF **NV**      )           Loan Number:  __3345362__

                  ) ss:

COUNTY OF **Pershing**   )

This Manufactured Home Rider is made on this day __6/17/2009__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to __Taylor, Bean & Whitaker Mortgage Corp.__ (the "Lender") of the same date and covering the Property described in the Security Instrument which is located at:

__620 RESERVOIR RD, Lovelock, NV 89419__

Borrower and Lender agree that the Security Instrument is amended and supplemented to read as follows:

A.    The Property covered by the Security Instrument (referred to as "Property" in the Security Instrument) includes, but is not limited to the Manufactured Home
(Serial Number: *CAFLN17AB138785* Model: *Sunpoint*,
Make: *Fleetwood*, Year: *1992*, Size: *13x52*,
Label/Seal No.: _____ affixed to the property legally described in the Security Instrument.

B.    Additional Covenants of Borrower:

      1.    Borrower will comply will all state and local laws and regulations regarding the affixation of the Manufactured Home to the property described in the Security Instrument including, but not limited to, surrendering the Certificate of Title (if required) not obtaining and recording the requisite governmental approval and accompanying documentation necessary to classify the Manufactured Home as real property under state and local law, including a statement of ownership and location.

      2.    The Manufactured Home described above will be, at all times and for all purposes, permanently affixed to and part of the property described in the Security Instrument.

      3.    Affixing the Manufactured Home to the property described in the Security Instrument does not violate any zoning laws or other local requirements applicable to manufactured homes.

Before me, the undersigned authority duly authorized to take acknowledgments and administer oaths personally appeared KATHERINE L MCCOSKEY

("Affiants") who, upon being duly sworn, depose and say as follows:

1.    Affiants hereby certify that, upon taking title to the property described above, they will do the following:

    The manufactured home will be permanently part of the real property that secures the Security Instrument executed on __6/17/2009__.

    All necessary documentation required will be supplied to perfect title in the Manufactured home.

    Manufactured Home is an improvement to the land and an immoveable fixture considered as real estate.

2.    Affiants acknowledge that this Affidavit of Intent is given as a material inducement to cause __Taylor, Bean & Whitaker Mortgage Corp.__ to make a mortgage loan to Affiants and that any false statements, misrepresentations or material omissions shall constitute a breach of the Affiant's obligation to __Taylor, Bean & Whitaker Mortgage Corp.__ and that all the provisions of the mortgage indenture concerning default on the Promissory Note will thereupon be in full force and effect.

3.    Affiants further acknowledge that it is a Federal crime punishable by fine or imprisonment or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

Loan Number:    3345362

4.  The agreements and covenants contained herein shall survive the closing of the mortgage loan transaction.

_KATHERINE MCCOSKEY_      Date __6-19-09__
**KATHERINE L MCCOSKEY**

_____ Date_____

_____ Date_____

_____ Date_____

_____ Date_____

_____ Date_____

State of  Nevada
County of  Pershing

The forgoing instrument was acknowledged before me this __19__ day of __June 2009__ by __Katherine L McCos__ who is personally known to me or who has produced __NV DL__ as identification.

(Seal)

SHELLY INIGUEZ
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 07-4063-15
MY APPT. EXPIRES JULY 11, 2011

_Shelly Iniguez_
Notary Public
Shelly Iniguez

# EXHIBIT 2

366915

| Form 668 (Y)(c) (Rev. February 2004) | 10185 | Department of the Treasury - Internal Revenue Service **Notice of Federal Tax Lien** | | BOOK **454** PAGE **62** |
|---|---|---|---|---|

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 913-6050 | Serial Number | For Optional Use by Recording Office |
|---|---|---|
| | 658666610 | |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer KATHERINE MCCOSKEY

OFFICIAL RECORDS PERSHING CO. NEVADA RECORDED... BY Internal Rev Service DARLENE MOURA COUNTY RECORDER 10 JUN -1 PM 1:37 DEP. FILE NO. ROLL PAGE

366915

INDEXED

Residence    620 RESERVOIR RD
             LOVELOCK, NV 89419

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2008 | XXX-XX-6822 | 06/22/2009 | 07/22/2019 | 20100.11 |

| Place of Filing | | | | |
|---|---|---|---|---|
| | COUNTY RECORDER PERSHING COUNTY LOVELOCK, NV 89419 | | Total $ | 20100.11 |

This notice was prepared and signed at _____ SEATTLE, WA _____, on this,

the ___20th___ day of ___May___, ___2010___.

| Signature *R. A. Mitchell* | Title ACS (800) 829-7650 | 15-00-0000 |
|---|---|---|
| for SUSAN MEREDITH | | |

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004) CAT. NO 60025X